THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID PEREZ,           )
                       )
        Plaintiff,     )
                       )   Case No. 07 C 2981
                       )
    v.                 )   Magistrate Judge
                       )   Arlander Keys
                       )
MICHAEL J. ASTRUE,     )
Commissioner of the Social )
Security Administration,   )
                       )
        Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, David Perez, moves this court for Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, to reverse or remand the final decision of the Commissioner of Social Security ("the Commissioner"), who denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). 42 U.S.C. § 405(g). Defendant Commissioner has filed his Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment. For the reasons set for below, the Court grants Plaintiff's motion and reverses the decision of the Commissioner.

### Procedural History

On April 7, 2004, Mr. Perez filed an application for DIB and on August 23, 2004, he filed an application for SSI, alleging disability beginning September 25, 2002. Both claims were denied

initially and upon a request for reconsideration. The plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on January 13, 2005. On July 31, 2006, a hearing was conducted before ALJ Judith S. Goodie, where the plaintiff appeared with his attorney, Timothy White.

In a decision dated September 14, 2006, the ALJ determined that Mr. Perez was not disabled; and therefore, not entitled to benefits.

On March 30, 2007, the Appeals Council denied the plaintiff's request for review of his claim, which rendered the ALJ's decision the Commissioner's final administrative determination. As a result, Mr. Perez commenced this action seeking reversal of the Commissioner's final decision or in the alternative, remand for further proceedings.

## Factual History

### 1. The Plaintiff's Background and Testimony

David Perez was born on April 10, 1957, and is currently 51 years old. He was 45 years old on the date he alleges disability. He is currently not married. According to Mr. Perez, he only speaks Spanish and is unable to communicate in English. At his hearing, Mr. Perez testified, through an interpreter, that he completed up to the first grade in Mexico and he was seventeen years old when he came to the United States. He previously worked as a roofer and factory laborer, and was

working as a laborer just before he became disabled in September of 2002. According to Mr. Perez, as a roofer, he was required to stand, kneel, and bend over while standing and kneeling, and would at most carry ninety pounds. However, at the time of his injury he worked in a factory for several years, filling containers with soap. According to the plaintiff, some barrels weighed as much as 500 pounds, which he would have to lift if the barrels fell, but he did not lift objects regularly during the course of a work day. The plaintiff also testified that, as a factory worker, he stood all day, holding a pipe over the barrel that weighed approximately fifteen pounds, and would sometimes lift garbage bags weighing approximately fifty pounds. He also claimed that, at times, he operated a forklift (for which he has a license) containing bags, barrels or garbage, which he would lift, while sitting, onto the forklift. In addition, Mr. Perez testified that during his employment with the soap factory he communicated with his supervisor in Spanish with the help of a translator.

At the hearing, Mr. Perez also testified that he injured his ankle in September of 2002, but did not stop working until 2003. Although the plaintiff's testimony is not completely clear, it appears that, upon his return to work after his injury, he was placed on "light duty" that required him to, while sitting, pour liquid from small containers of out-dated product and then break

the glass into a barrel. However, according to Mr. Perez, he served in this position for only two days, because he failed a physical examination and was laid off, and has not worked since that time.

Additionally, the plaintiff testified that he has a driver's license, but he hadn't driven for about two months prior to the hearing. He further testified that he took the subway to the hearing with his wife and her friend. According to the plaintiff, he hardly goes out, besides going to the park to walk a little, and he also walks about four blocks to his doctor's appointments. The plaintiff also claims that he helps his wife with household chores when he is not in pain.

Mr. Perez also testified that he is right handed, and although he experiences pain in his right hand, he is able to hold a fork with it and eat. He claims, however, that he has never been treated by a physician for the problem with his right hand/shoulder. The plaintiff further testified that he experiences pain in his right ankle, and that, in order to alleviate some of the pain, he takes Aleve, as his physician suggested, and he also takes medication for his diabetes and blood pressure on a daily basis. The plaintiff also testified that he uses a cane to walk when he is outside, but does not use one in his apartment. He also testified that he can walk up the stairs to his second floor apartment without the use of a cane,

4

but has some difficulty and must hold onto the railing at times. The plaintiff also testified that he can stand and walk for about thirty minutes before needing to sit down, and can probably sit for hours before needing to stand up. However, he claims that, after walking for about four blocks, his foot becomes swollen, which lasts about one night.

### III. Consulting Physician

Over the course of approximately four and a half months, Mr. Perez was examined by three consulting physicians. During the first examination on July 6, 2004, Mr. Perez told Hilton Gordon, M.D. that he has experienced pain in his right ankle ever since he injured it in September of 2002. Dr. Gordon noted that MRI, EMG and x-rays have been negative, although he still complains of pain. Dr. Gordon also noted that the plaintiff wears a soft cast on and off when he goes out if he stands for twenty minutes or travels long distances, and complains of pain if he walks more than two blocks, goes up more than two flights of stairs, or travels long distances or runs, which usually decrease with rest and Vioxx. According to Dr. Gordon's notes, in addition to Vioxx, Mr. Perez was also taking Avapro, Trimadol and Glyburide. After a physical examination, Dr. Gordon found the plaintiff to be alert, oriented and in no acute distress, with the ability to get on and off the examining table without difficulty. Dr. Gordon also noted that Mr. Perez had a slight limp favoring the

right side, but he can walk greater than fifty feet without a cane. (R. at 206).

Mr. Perez was also examined by Fauzia A. Rana, M.D., on October 11, 2004, who noted that Mr. Perez did not speak English and that his history was obtained with the help of his ex-wife. Dr. Rana documented the following history:

> Diabetes – the plaintiff's diabetes is "usually poorly controlled, but he has never been hospitalized for control of diabetes." The plaintiff complained of cramps all over his body, especially at night, with no history of intermittent claudication. The plaintiff also denied any paresthesias and stated that he never had laser treatment to the eyes or cataract surgery in the past. He also denied any history of heart disease or asthma.
>
> Chest pains – the plaintiff complained of chest pains, occurring off and on two to three times a month, which he described as "a sharp, sticking pain in the left chest with no radiation to arms and neck." Also, according to the plaintiff, the pain lasts for a few minutes and is usually eased spontaneously, though he has never been hospitalized for chest pain.
>
> Right ankle pain – the plaintiff also complained of right ankle pain, which would swell up intermittently. The plaintiff further stated that he had difficult walking more than one block, however, he did not use any ambulatory aid, and also wore a brace on the ankle.

(R. at 218). Dr. Rana also listed the plaintiff's then current medications as Glyburide, Lisinopril, Metformin, Trimacol and Avapro. *Id.*

After conducting a physical examination, Dr. Rana found that the plaintiff walks with a minimal limp favoring the right leg, without any ambulatory aid. (R. at 220). Dr. Rana's final

diagnostic impression was that the plaintiff suffered from adult onset diabetes mellitus, which was poorly controlled, but was non-insulin dependent. *Id*. Dr. Rana also found that the plaintiff's blood pressure was poorly controlled, and that his complaints of chest pains, as described, are not typical of angina, but that a cardiac cause cannot be ruled out. *Id*.

The final consultative examination was conducted on November 23, 2004, by David Hillman, M.D. (R. at 230). Dr. Hillman concluded that the plaintiff had "refractive error" and benefitted from his then current glasses, with the remainder of his examination within normal limits. *Id*. He opined that the best corrected visual acuity was consistent with the exam; however, he did not feel that the visual field measurements were consistent with the examination. *Id*. He did find that, based on his examination, he would expect normal visual field measurements. *Id*.

### IV. State Agency Physician

A state agency physician opined that the plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; sit (with normal breaks) for a total of six hours in an eight-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (R. at 211). He also found that

the plaintiff should never climb ropes, ladders and scaffolds due to allegation of dizziness, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. at 212). The plaintiff's allegations of dizziness also led the state agency physician to conclude that the plaintiff should avoid concentrated exposure to hazards (e.g. heights, machinery). Id.

### V. Testimony of Vocational Expert

At the hearing, Vocational Expert ("VE") Thomas Dunleavy characterized Mr. Perez's vocational history in the last fifteen years as that of a "factory laborer." However, the VE indicated that the times when the plaintiff operated a forklift during his employment elevated the level of employment to semi-skilled. The VE found that the exertional level for this work was heavy, because the plaintiff testified that he had to lift some of the barrels that weighed two hundred pounds and was lifting fifty pounds on a routine basis. The VE also testified that the DOT for an industrial truck operator is at the medium exertional level.

At the hearing, the ALJ posed the following hypothetical to Mr. Dunleavy:

> assume we're dealing with an individual age 45 who has the same educational background and work experience as the [plaintiff]. Further assume the individual has the following functional capacity: to lift and carry up to 10 pounds; to sit for six hours, but no pushing or pulling with the right lower extremity, occasional stairs, ramps; occasional bending, crouching, crawling, and kneeling; no ropes or ladders; avoid concentrated

8

exposure to hazardous machinery and unprotected
heights. Could this individual perform any of the
[plaintiff's] past jobs as he actually performed it or
as they're performed in the national economy?

(R. at 289). The VE testified that the plaintiff could perform his previous job of filling small bottles, which he characterized as sedentary unskilled factory labor. The VE opined that there were other jobs in the Chicago metropolitan area that could be performed under the ALJ's hypothetical. At least 6,000 assemblers and 4,000 packer inspector/visual inspection positions, which are both sedentary and unskilled. However, the VE indicated that the plaintiff's ability to operate a forklift was semi-skilled and was also considered an acquired skilled, because Mr. Perez is licensed to operate a forklift. The VE opined that a person would need to be able to read and speak English in order to be employed as a forklift operator.

### VI. ALJ's Decision

On September 14, 2006, the ALJ issued a written decision, concluding that, based upon the evidence presented, the plaintiff was not "disabled" as defined by the Act. The ALJ found that the plaintiff suffered from the following severe impairments: right ankle sprain, right foot and ankle sensory neuropathy, hypertension and poorly controlled diabetes mellitus. (R. at 20). The ALJ noted that, although the plaintiff alleges disability due to a right ankle disorder, the documentary record

9

also supports the above additional impairments. The ALJ also noted that the record contains a diagnosis of atypical chest pain and that the record, along with testimony, indicate some loss of visual activity, however, she did not find these impairments to be severe within the meaning of the regulations. The ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App.1.

In assessing the plaintiff's residual functional capacity ("RFC"), the ALJ determined that the plaintiff retained the capacity to "lift and/or carry up to 10 pounds, sit for 6 hours and stand and/or walk up to 2 hours in an 8-hour day, and push and/or pull 10 pounds, but without using the right lower extremity." (R. at 21). The ALJ further determined that the plaintiff can "occasionally climb stairs and ramps, stoop, crouch, crawl, and kneel, but cannot climb ropes or ladders," concluding that "[h]e must work in an environment that avoids concentrated exposure to temperature extremes, hazardous machinery and unprotected heights." (R. at 21). In explaining her finding, the ALJ noted that the plaintiff's RFC determination is

> medically reasonable and based on the lack of objective support for [the plaintiff's] subjective complaints in the documentary record, the lack of consistency in [the plaintiff's] testimony as well as the lack of evidence for any end organ damage due to hypertension or diabetes mellitus, there is little evidence upon which

10

>   to find greater limitations on [the plaintiff's]
>   functional capacity than found.

(R. at 22). The ALJ admitted that the plaintiff is unable to perform any past relevant work as a roofer, which is heavy and unskilled, and a factory laborer, filling containers in a soap factory; however, she found that there are jobs that exist in significant numbers in the national economy that he could perform. (R. at 22-23).

## STANDARD OF REVIEW

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178,

181 (7th Cir. 1990).

While an ALJ need not address every piece of evidence in the record, he must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the Court may afford the claimant meaningful review of the SSA's ultimate findings. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

## SOCIAL SECURITY REGULATIONS

An individual claiming a need for DBI and SSI must prove that he or she has a disability under the terms of the Social Security Administration ("SSA"). In determining whether an individual is eligible for benefits, the social security regulations require a sequential five step analysis. First, the ALJ must determine if the claimant is currently employed; second, a determination must be made as to whether the claimant has a severe impairment; third, the ALJ must determine if the impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the claimant's RFC, and must evaluate whether the claimant can perform his or her past

relevant work; and fifth, the ALJ must decide whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At steps one through four, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. *Id.*

## DISCUSSION

### A. ALJ's application of Grid Rules 201.17 and 201.00(h)(1)

Both the plaintiff and the defendant agree that, given the facts as found by the ALJ, she failed to properly apply the plaintiff's medical and vocational characteristics to Medical-Vocational Guidelines Rule 201.17 ("Grid Rule 201.17") and Rule 201.00(h)(1), which would have directed a finding of disability. The Court agrees.

In her decision, the ALJ found that the plaintiff, who was forty-five years of age at the time of the hearing, had a previous work history of semi-skilled, with no transferable skills, was unable to communicate in English, and was now limited to sedentary work. The ALJ found that the plaintiff was not disabled, reasoning that Grid Rule 201.17 would direct a finding of disabled *if* the plaintiff's past relevant work had been unskilled. The ALJ explained that, "[e]ven though [the plaintiff's] semi-skills are not transferable to work at the sedentary exertional level, I find that Rule 201.17 does not direct a finding of disabled because [the plaintiff's] work

13

experience is semi-skilled."[1] (R. at 24). The ALJ concluded that the plaintiff "is able to make the vocational adjustment to sedentary unskilled work." *Id.* The Court finds the ALJ's reasoning here flawed.

As the ALJ correctly points out, the plaintiff does not neatly fall within Grid Rule 201.17, because his past work was semi-skilled. The language within Grid Rule 201.17 itself states that a younger individual, who is 45 to 49 years of age, illiterate or unable to communicate in English and whose previous work experience is *unskilled or is without prior work experience*, should be found disabled. Hence, given the ALJ's finding of semi-skilled past-work and taking the language as written in the rule, Grid Rule 201.17 does not apply to the plaintiff. However, when this rule is read in conjunction with other federal

---

[1] Although neither of the parties in this case cited a previous decision entered by this Court, *Ortiz v. Chater*, 986 F.Supp. 479 (N.D.Ill. 1997), it is strikingly similar to the present case. In that case, the plaintiff was forty-six years old at the time of the hearing, had completed four years of elementary school in Mexico, could not communicate in English, testified through the use of a Spanish interpreter at the hearing and his previous work history involved operating machines, however, the ALJ found that he was now limited to sedentary work. In addition, similar to the present case, the ALJ found that Mr. Ortiz's past work qualified as semiskilled, but that he had not acquired any transferable skills. Moreover, as in the present case, the ALJ in *Ortiz* opined that Grid Rule 201.17, which would direct a finding of disabled, did not apply to plaintiff. However, there is an important distinction between *Ortiz* and this case. In *Ortiz*, the reason the ALJ found that Grid Rule 201.17 did not apply to the plaintiff was because the plaintiff had further limitations on performing sedentary work (e.g. he could not lift more than five pounds, his need to avoid bending and stooping and his need to be able to change positions occasionally). Whereas, in this case, the ALJ found that the rule did not apply to the plaintiff simply because his previous work was semi-skilled and not unskilled; thus, ignoring the directions of federal regulations to the contrary.

14

regulations, the opposite result is directed.

The Code of Federal Regulations ("C.F.R.") § 404.1565 directs a finding of unskilled work history when a claimant for DIB cannot use his or her acquired skills in other skilled or semi-skilled work.[2] This is precisely the factual scenario of this case. The ALJ found that the plaintiff had a previous work history of semi-skilled, but that those skills were not transferable to other semi-skilled work. In addition, Social Security Ruling ("SSR") 82-41(2)(a) further supports a finding of disabled, as it states that, "the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable." Therefore, the ALJ should have treated Mr. Perez's semi-skilled work history as unskilled, because he did not have any transferable skills, hence, directing a finding of disabled. Furthermore, C.F.R. 201.00(h)(1) states that,

> a finding of "disabled" is warranted for individuals age 45-49 who: (i) Are restricted to sedentary work; (ii) Are unskilled or have no transferable skills; (iii) Have no past relevant work or can no longer perform past relevant work; and (iv) Are unable to communicate in English, or able to speak and understand English but are unable to read or write in English.

In her decision, the ALJ referenced C.F.R. 201.00(h)(1), but took issue with the use of the word "warranted," reasoning that it

---

[2]"If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled." 20 C.F.R. § 404.1565 (2008).

15

"'warrants' but does not 'direct' a finding of disabled", and thus, opted not to apply the rule at all. (R. at 24). The Court, however, does not believe that the use of the word "warrants" here, connotes a different meaning than that of "directs," and the ALJ has not cited a regulation-or anything at all for that matter-to support her reasoning here. Hence, in application of the ALJ's findings of facts, it is clear to the Court that her finding of "not disabled" was in error.

## B. ALJ's education and literacy determination

Although the Commissioner agrees that taking the ALJ's findings as they stand, a finding of disability was warranted, he finds fault with the ALJ's literacy determination. In support of the Commissioner's cross-motion for summary judgment, he argues that the ALJ did not give due consideration to the issue of the plaintiff's educational level and literacy. Specifically, he argues that the ALJ was not aware that these issues would be outcome-determinative and simply relied on the VE's testimony that Mr. Perez was functionally illiterate.

In review of the ALJ's findings, this Court must keep in mind that it is only to consider whether the ALJ's finding is supported by substantial evidence, which is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Additionally, this Court cannot make its own credibility determinations or usurp the

overall function of the ALJ. *Skinner*, 478 F.3d at 841.

After review of the ALJ's finding regarding the plaintiff's ability to communicate in English and education level, the Court finds it to be supported by substantial evidence in the record. The ALJ found that the plaintiff "has a marginal education and is not able to communicate in English," citing 20 C.F.R. Part 404.1564 and 416.964; a finding that is well supported by the record. As the defendant points out, Mr. Perez has demonstrated the need of assistance to complete forms relating to his claim of disability, due to his inability to read and write English. For example, Mr. Perez's Disability Report was completed by his former wife, Robin Perez. In addition, Section 1-H of the same report asked the following of the plaintiff: "Can you speak English?". The plaintiff checked the "YES" box, and indicated that he speaks a "little" English. On the same form, the plaintiff indicated that he could not read English, nor write more than his name in English, and listed Robin Perez as someone who speaks English that SSA could contact to relay messages to the plaintiff.

In addition, after conducting an in-person disability interview, the interviewer reported that Mr. Perez had difficulty reading, understanding with coherency, noting that Mr. Perez "spoke unclearly" and questions had to be repeated on some occasions for him to understand the question. (R. at 91). The

interviewer also noted that some of Mr. Perez's answers were not relevant to the questions being asked. *Id.* Moreover, Dr. Rana, one of the consulting physicians, also wrote in her examination notes that Mr. Perez "does not speak English" and that his medical "[h]istory was obtained with the help of his ex-wife." (R. at 218). Likewise, Dr. Labanauskas noted in the clinical summary of a December 05, 2003 examination that the plaintiff "speaks very little English" and that his history was obtained through his wife. (R. at 239). Although Dr. Gordon does not indicate whether the help of a translator was needed in order to conduct the examination of Mr. Perez, or whether the plaintiff had any difficulty understanding questions asked or answering questions posed, it cannot be automatically inferred (as the Commissioner argues) that none of the above in fact took place. The ALJ, and the Court, can only rely on the direct evidence available to the contrary.

In addition to the support of documentation in the record, during the hearing before the ALJ, the plaintiff testified with the help of an interpreter. During the hearing, the ALJ also asked a series of questions pertaining to the plaintiff's ability to understand and speak English, his ability to read English and Spanish, and the formal education he received in both Mexico (his native country) and the United States. In response to these lines of questions, the plaintiff testified that he completed up

18

to first grade in Mexico and has had no formal education in the United States. (R. at 267-68). He also testified that he understands very little spoken English and cannot read English at all. *Id.* He can read only a little Spanish and testified that he never learned how to write in Spanish. *Id.* Moreover, the plaintiff testified that, when he worked at the soap factory, he spoke Spanish in the workplace and that his supervisor, who spoke English, would communicate to him through use of a translator. The ALJ also acknowledged that, in spite of the VE's opinion that the plaintiff is illiterate in the vocational sense, the plaintiff nevertheless understood and responded to occasional questions in English during the hearing; though in spite of this observation, she still made an expressed finding that the plaintiff was not able to communicate in English.

Whether or not the ALJ recognized that the issue of literacy or the plaintiff's ability to communicate in English would be outcome determinative, as the defendant argues, she made an expressed finding regarding both, and this finding is supported by substantial evidence in the record.

### Conclusion

This Court has the judicial authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the [case] for a rehearing." 42 U.S.C. § 405(g). Generally when the Court finds that the final decision of the Commissioner is

not supported by substantial evidence, it remands the case to the ALJ for further proceedings. However, where, as here, the record has been fully developed and the ALJ's factual findings are supported by substantial evidence, but the only remaining issue is the application of the law to those facts, no useful purpose would be served by remanding the case, as the outcome is clear: Mr. Perez is disabled. *See Parks v. Sullivan*, 766 F.Supp. 627, 638 (N.D.Ill. 1991). To remand now, would only delay the receipt of benefits and cause the unnecessary expenditure of the parties' resources, with no useful purpose being served. Accordingly, the case is returned to the Commissioner for the purpose of granting the appropriate benefits.

For the reasons set forth above, the plaintiff's motion for summary judgment is GRANTED and the Commissioner's cross-motion for summary judgment is, therefore, DENIED.

Date: July 31, 2008          E N T E R E D:

*[signature: Arlander Keys]*

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT